UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

TERRENCE PARIS,

      Petitioner,

v.
                             Case No. 3:22-cv-1295-HES-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,

      Respondent.

_____

## ORDER

### I. Status

Petitioner Terrence Paris, an inmate of the Florida penal system, initiated this action on November 21, 2022, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254, which was signed only by his attorney. (Doc. 1).[1] It also included exhibits. (Docs. 1-2 through 1-6). On December 3, 2022, Paris filed an Amended Petition that he signed himself. (Doc. 3, Petition). Paris challenges a 2013 state court (Duval County, Florida) judgment of conviction for armed burglary with assault or battery and for possession of a firearm by a convicted felon. He raises four enumerated grounds for relief. See Petition at 17-25. Respondent submitted a memorandum in opposition to the

_____

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

Petition (Doc. 6, Response), as well as exhibits from the state court record. (Docs. 8-1 through 8-17). Taylor filed a brief in reply. (Doc. 10, Reply). This action is ripe for review.

## II. Procedural History

On July 3, 2012, the State of Florida charged Paris by information with armed burglary with assault or battery, see Fla. Stat. §§ 810.02(2)(a), (b) and 775.087(2)(a)2 (Count 1), and possession of a firearm by a convicted felon, see Fla. Stat. §§ 790.23(10(a) and 775.087(2)(a)1 (Count 2). (Doc. 8-1 at 33-34, 231-32). Those charges arose out of allegations that Paris and his co-defendant, Kendrick Jackson (hereinafter collectively the "defendants" or "co-defendants"), broke into the home of Doran Moore at an apartment complex in Jacksonville on May 25, 2012.

On July 25, 2013, the State filed a notice of intent to classify Paris as a Prison Release Re-Offender (PRR) pursuant to Fla. Stat. § 775.082(9). (Doc. 8-1 at 41). That statute defines as PPR to include a defendant who commits or attempts to commit certain offenses, including armed burglary or burglary of a dwelling, within three years of being released from prison on a sentence for a prior felony. Fla. Stat. §§ 775.082(9)(a)(1)(p), (q). If the state attorney determines that a defendant meets the definition of a PRR, it may file a notice

2

asking the court, upon conviction, to impose an enhanced mandatory minimum sentence without the possibility of parole. Id., §§ 775.082(9)(a)(3), (b). The State deemed Paris to meet the definition, asserting that he had been previously convicted of burglary of a dwelling and had been released from prison within three years of the burglary in the instant case. (See Doc. 8-1 at 41). As a result, if Paris were convicted on Count 1, charging armed burglary, and the trial court were to find by a preponderance of the evidence that Paris met the definition of a PRR, he would face a mandatory sentence of life imprisonment without the possibility of parole. See Fla. Stat. §§ 810.02(2); 775.082(9)(a)1, 3; 775.082(9)(b).

Also on July 25, 2013, the state trial court held a final pretrial hearing. (Doc. 8-1 at 325-339). Near the end of the hearing, the court and the parties addressed Paris's status as a PRR and whether there had been any plea negotiations, as follows:

[Prosecutor]: There's one other issue, Your Honor.

[Court]: Okay.

[Prosecutor]: I have filed and provided a copy to the defense and defendant, State's notice of intent to classify Mr. Paris as a prison releasee re-offender, relying on a prior conviction and sentence for burglary to a dwelling on March 4th, 2009, in Duval County, State of Florida. His prison release date, Your Honor, was October 20th of 2010. The date of offense in our case is May 25th,

3

2012, within the three-year time frame of the commission of the crime charged. In conformity with Florida Statutes 775.082, the State of Florida will seek to have the defendant sentenced to life imprisonment as a minimum mandatory sentence if convicted.

[Court]: Okay.

[Defense Counsel]: Your Honor, I just want to make sure. I had indicated to Mr. Paris a couple of weeks ago that this was likely coming, I just want to make sure that he understands that if he is convicted as charged, it is a mandatory life sentence with no parole.

[Prosecutor]: As to Count 1.

[Defense Counsel]: As to Count 1.

[Court]: Would you place Mr. Paris under oath, please.

[Clerk]: Please raise your right hand.

[Defendant]: (Complying.)

[Clerk]: Do you solemnly swear or affirm that the testimony you give shall be the truth, the whole truth and nothing but the truth so help you God?

[Defendant]: I do.

[Clerk]: Thank you.

[Court]: Okay. You can put your hand down. Thank you, Mr. Paris.
Did you understand that the State has filed a prison release re-offender notice which, if you were to be convicted as charged on Count 1, it would subject you to a mandatory life sentence?

[Defendant]: Yes, ma'am.

4

[Court]: And that means you don't get out early, I mean, it's life —

[Defendant]: Yes, ma'am.

[Court]: — with no early release? Have there been any negotiations in this case?

[Defense Counsel]: Yes and no.

[Prosecutor]: There have been no formal offers made by either side.

[Court]: Okay. So there's been nothing that you needed to talk to him about that has been offered by the State? There's been no formal offer by the State?

[Defense Counsel]: No, there's been no formal offer.

[Court]: All right. Then we'll see you on Monday for jury selection.

(Doc. 8-1 at 336-38).

The defendants' trial was held on September 3, 4, 5, and 6, 2013. (See Doc. 8-2). It was bifurcated to have the jury first consider just the charges for armed burglary with assault or battery. The victim, Moore, testified that Jackson and Parris broke into his home, beat him up, and discharged a firearm in the process. Both defendants pursued theories of misidentification, arguing that they were never at Moore's apartment. See Jackson v. Secretary, Fla. Dep't of Corr., No. 4:19CV368-WS-HTC, 2022 WL 676086, at *2 (N.D. Fla. Jan.

5

20, 2022), report and recommendation adopted, 2022 WL 671770 (N.D. Fla. Mar. 7, 2022), certificate of appealability denied, No. 22-11102-J, 2023 WL 2812183 (11th Cir. Mar. 1, 2023). The jury found both defendants guilty, with special findings that the structure was a dwelling; that each defendant was armed or became armed before or during the offense; and that, during the offense, each possessed and discharged a firearm and committed an assault or battery. (Doc. 8-1 at 271-72; Doc. 8-2 at 1001-03). The second part of the bifurcated trial then proceeded on the charges against each defendant for possession of a firearm by a convicted felon. (Doc. 8-2 at 1003-04). Both defendants stipulated to prior felony convictions. (Id. at 1004-05). The jury again found both defendants guilty. (Doc. 8-1 at 273; Doc. 8-2 at 1017-18).

On December 3, 2013, the trial court held a sentencing hearing. (Doc. 8-1 340-61). The State presented documentary evidence and testimony, which Paris did not contest, showing that, on March 4, 2009, he had been convicted of burglary of a dwelling and that he had been released from prison on that sentence on October 20, 2010. (See id. at 285-94, 346-350). The trial court then found by a preponderance of the evidence that Paris met the definition of a PRR, on the basis that he had committed the armed burglary in Count 1 within three years of his release from custody on the prior felony conviction. (Doc. 8-1

6

at 350-51). Accordingly, on that count, the trial court applied a mandatory life sentence, without parole, with an additional 20-year minimum mandatory for discharge of a firearm. (Doc. 8-1 at 301-09, 358). On the felon-in-possession conviction, the trial court sentenced Paris to 15 years, with a 3-year minimum mandatory for actual possession of a firearm, to run concurrently with the sentence on Count 1. (Id. at 301-09, 358-59).

Paris appealed. (Doc. 8-3). On May 14, 2015, the Florida First District Court of Appeal (First DCA) affirmed in a per curiam order without a written opinion. (Doc. 8-6); Paris v. State, 198 So. 3d 634 (table), 2015 WL 2242159 (Fla. 1st DCA 2015). On June 29, 2015, the First DCA denied Paris's application for rehearing and request for a written opinion. (Doc. 8-8). The mandate issued on July 15, 2015. (Doc. 8-9). Paris did not seek review in the Supreme Court of the United States.

On September 14, 2016, Paris, through counsel, filed a motion in the trial court to correct a sentencing error, pursuant to Rule 3.800 of the Florida Rules of Criminal Procedure. (Doc. 8-10 at 5-21). Paris there claimed that the PRR sentence violated his Sixth Amendment right to a trial by jury under Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 570 U.S. 99 (2013), because the jury had not been required to find beyond a reasonable

7

doubt that Paris had committed the instant burglary within three years of his release on a prior felony conviction. (Id.) On September 18, 2018, the trial court denied the motion on the merits. (Id. at 22-25). Paris appealed to the First DCA, which affirmed per curiam without a written opinion on July 11, 2019. (Doc. 8-11); Paris v. State, 275 So. 3d 559 (Table), 2019 WL 3046044 (Fla. 1st DCA 2019).

Meanwhile, on July 13, 2017, with his Rule 3.800 motion still pending in the trial court, Paris filed another counseled motion in that same court, this one seeking postconviction relief pursuant to Rule 3.850, Fla. R. Crim. P. (Doc. 8-13 at 6-22). Paris there raised three claims of ineffective assistance of counsel, based on his trial attorney's failure to: (1) file a motion to suppress based on an allegedly illegal citizen's arrest; (2) to ensure that Paris understood he faced a mandatory life sentence if the State sought PRR sentencing, causing him to reject an alleged plea offer; and (3) object to the use of the conjunction "and/or" between the names of the co-defendants in the jury instructions. (Id.) On April 18, 2022, the trial court entered a two-page order denying the motion without an evidentiary hearing. (Doc. 1-3). Paris appealed. (Doc. 8-14). On October 27, 2022, the First DCA affirmed per curiam without a written opinion. (Doc. 8-16); Paris v. State, 349 So. 3d 269 (table), 2022 WL

8

15009189 (Fla. 1st DCA 2022). The mandate issued on November 14, 2022. (Doc. 8-17).

Paris filed this federal habeas action on November 21, 2022.[2] (Doc. 1). He filed his now-governing amended Petition on December 15, 2022. (Petition). He raises the three ineffective-assistance-of-counsel claims contained in his Rule 3.850 motion and the Apprendi/Alleyne claim from his Rule 3.800 motion.[3] (Id.) Respondent denies that Paris is entitled to an evidentiary hearing or habeas relief. (Response).

### III. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v.

---

[2] Respondent concedes that the Petition "appears" to have been filed within the one-year statute of limitations applicable to § 2254 habeas petitions under 28 U.S.C. § 2244(d). (Doc. 8 at 8).

[3] Respondent acknowledges that Petitioner has exhausted each of his federal habeas claims in the state courts (Doc. 8 at 15, 24, 29, and 41). See 28 U.S.C. § 2254(b); Castille v. Peoples, 489 U.S. 346, 351 (1989).

Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318–19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Paris's] claim[s] without further factual development," Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## IV. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), abrogation recognized on other grounds by Smith v. Comm'r, Ala. Dep't of Corr., 67 F.4th 1335, 1348 (11th Cir. 2023). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)). As such, federal habeas review of final state court decisions is "greatly circumscribed

10

and highly deferential." Id. (internal quotation marks omitted) (quoting Hill v. Humphrey, 662 F.3d 1335, 1343 (11th Cir. 2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. See Marshall v. Sec'y, Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 584 U.S. 122, 125 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 125-26.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to,

11

or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97–98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

> First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.
>
> Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. [12, 18] (2013); accord Brumfield v. Cain, 576 U.S. [305, 322] (2015)]. Whatever that "precise

12

relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance.'" Titlow, 571 U.S. at [18] (quoting Wood v. Allen, 558 U.S. 290, 301 (2010)).

Tharpe v. Warden, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. See Cullen v. Pinholster, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." Burt v. Titlow, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" Tharpe, 834 F.3d at 1338 (quoting Richter, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. Richter, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

13

## B. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (first citing Wiggins v. Smith, 539 U.S. 510, 521 (2003); and then Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687.

> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id., at 687.

Richter, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the Strickland test

14

before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, 562 U.S. at 105. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable — a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, 562 U.S. at 105.

15

Hittson v. GDCP Warden, 759 F.3d 1210, 1248 (11th Cir. 2014); Knowles v. Mirzayance, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by Strickland, the AEDPA adds another layer of deference—this one to a state court's decision—when we are considering whether to grant federal habeas relief from a state court's decision." Rutherford v. Crosby, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting Strickland's high bar is never an easy task." Padilla v. Kentucky, 559 U.S. 356, 371 (2010).

## V. Findings of Fact and Conclusions of Law

### A. Ground One

Paris first claims that his trial counsel rendered ineffective assistance by failing to file a motion to suppress evidence based on an allegedly illegal citizen's arrest. (Petition at 17-21). Where an ineffective-assistance claim is based on counsel's failure to litigate a motion to suppress, the claimant must establish that counsel's conduct "fell below an objective standard of reasonableness" and thus constituted deficient performance. Kimmelman v. Morrison, 477 U.S. 365, 375 (1986) (quoting Strickland, 466 U.S at 688).  The claimant must also establish prejudice, which in this context requires showing both (1) that the legal claim underlying a motion to suppress would have been

16

"meritorious" and (2) that "there is a reasonable probability that the [result of the proceeding] would have been different absent the excludable evidence." Id.

Paris contends that his attorney should have moved to suppress his identification and other evidence as obtained in violation of the Fourth Amendment. (Doc. 3 at 17-21). Specifically, Paris argues those items were the product of his allegedly unlawful arrest by Victor Hughes, a retired law enforcement officer who lived and worked as a part-time "courtesy officer" at the apartment complex where the burglary occurred. (Doc. 3 at 17-21; Doc. 8-2 at 315-16). Hughes testified that, at about 3:30 a.m. on the night of the burglary, he was patrolling the complex in his personal vehicle when he heard what sounded like three or four gunshots. (Doc. 8-2 at 316). He drove in the direction of the sounds (id.), whereupon he encountered a red Chevrolet automobile traveling approximately 30 miles per hour, with its lights off. (Id. at 323, 331). The red car stopped, and Hughes shined a flashlight inside, allowing him to make out the faces of two black males in the front seats. (Id. at 324-25). The red car pulled around Hughes's vehicle, drove past him, and headed towards the back of the complex. (Doc. 8-2 at 326, 343). Hughes drove around to the other complex entrance and stopped to exit his vehicle. Just as he got out, with his personal firearm drawn, a man traveling on foot almost

17

ran into him. (Id. at 327, 332-33). Seeing Hughes with his gun, the man, who Hughes recognized as the passenger from the red Chevy and whom he later identified at trial as Paris, went "right to the ground." (Id. at 327). Hughes called 9-1-1 and requested assistance from law enforcement, advising that he was holding a suspect at gunpoint. (Id. at 328-30).

Personnel from the Jacksonville Sheriff's Office quickly arrived on the scene and took Paris into custody. (Id. at 444). The officers then located the red Chevrolet within the complex, abandoned in the roadway with the driver's side door open, about 200 to 300 yards from where Hughes had been holding Paris. (Doc. 8-2 at 464-65, 470, 479). A rifle was recovered from inside the car, and a ski mask was found outside the open door. (Id. at 471-72). A credit union debit card for an account belonging to Paris was also recovered from the vehicle. (See id. at 774-82). With the assistance of a K9 unit, law enforcement later apprehended Jackson in a nearby apartment complex and located a handgun under a vehicle in the area. (Id. at 497-502). They took Hughes over to where they had Jackson, and Hughes identified him as the driver of the red Chevrolet. (Doc. 8-2 at 335-36).

Paris argues that, upon detaining him, Hughes had "at best reasonable suspicion that a gun had been fired but did not have probable cause to arrest

18

Paris for commission of any felony." (Petition at 20). As such, Paris maintains that Hughes made an "illegal citizen's arrest" (id. at 17) and that "Paris was identified as a fruit of this illegal arrest." (Id. at 20). Paris further asserts that "[a] reasonably competent defense attorney would have filed a motion to suppress [under the Fourth Amendment] based on State v. Sobrino, 587 So. 2d 1347 (Fla. 3rd DCA 19991) (cited with approval by State v. Furr, 723 So. 2d 842 (Fla. 1st DCA 1998))." (Petition at 20-21).

The Fourth Amendment provides in relevant part: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." It is applicable to the States under the Due Process Clause of the Fourteenth Amendment. Mapp v. Ohio, 367 U.S. 643 (1961). Under the so-called "exclusionary rule," evidence obtained in violation of the Fourth Amendment is generally inadmissible in a criminal trial. See Utah v. Strieff, 579 U.S. 232, 237 (2016) (citing Mapp, 367 U.S. at 655; Segura v. United States, 468 U.S. 796, 804 (1984)).

The state trial court rejected this claim in short order, on the basis that Hughes was acting as a private citizen and that the exclusionary rule therefore did not apply. (Doc. 1-3 at 1 (citing Garner v. State, 729 So. 2d 990, 992-93 n.3

19

(Fla. 5th DCA 1999)). The trial court thus implicitly determined that a motion to suppress would have been meritless. That court's order is the last reasoned decision on all three claims by Paris alleging ineffective assistance of counsel. See Wilson, 584 U.S. at 125. Because it rejected those claims on the merits, habeas relief is precluded unless its decision is contrary to, or represents an unreasonable application of Supreme Court precedent, 28 U.S.C. § 2254(d)(1), or is based upon an unreasonable determination of fact, 28 U.S.C. § 2254(d)(2).

Paris argues that the trial court's decision is not only "wrong as a matter of law" but also an unreasonable application of clearly established federal law under § 2254(d)(1). (Reply at 2). Paris does not dispute the well-established principle that the Fourth Amendment "was intended as a restraint on the activities of the government and its agents and is not addressed to actions, legal or illegal, of private parties." United States v. Castaneda, 997 F.3d 1318, 1328 (11th Cir. 2021) (quoting United States v. Mekjian, 505 F.2d 1320, 1327 (5th Cir. 1975)[4] (emphasis omitted)); see also Sheff v. State, 329 So. 2d 270 (Fla. 1973). He also concedes that "Hughes himself is not a law enforcement officer ..." (Reply at 2). Nevertheless, Paris contends that the Fourth

---

[4] Decisions of the Former Fifth Circuit handed down before the close of business on September 30, 1981, are binding precedent in the Eleventh Circuit. Bonner v. City of Pritchard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

Amendment applied, claiming that "Hughes was acting, not as a citizen, but as a government agent with knowledge of the police." (Id.)

A search or seizure by a private person does implicate the Fourth Amendment if "he acts as an instrument or agent of the government." United States v. Steiger, 318 F.3d 1039, 1045 (11th Cir. 2003). "For a private person to be considered an agent of the government, [courts] look to two critical factors: (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." Id.; accord Osorio v. State, 186 So. 3d 601, 606 (Fla. 4th DCA 2016).

Paris contends Hughes was acting "for the express purpose of assisting law enforcement." (Reply at 3). However, in detaining Paris, Hughes was performing his duties as a security guard for a private entity, which does not imply that he was acting as an agent or instrumentality of the government. See United States v. Bomengo, 580 F.2d 173, 175 (5th Cir. 1978), cited with approval, Bomengo v. State, 368 So. 2d 73 (Fla. 3rd DCA 1979)); United States v. Francoeur, 547 F.2d 891, 894-95 (5th Cir. 1977); United States v. Propst, 369 F. App'x 42, 45 (11th Cir. 2010); Alexander v. State, 902 So. 2d 292, 293 (Fla. 3rd DCA 2005).

21

Paris claims, however, that "the police were aware of Mr. Hughes' actions and acquiesced to the conduct" as shown by the fact that Hughes was, Paris says, "on the phone with the police," both "while he chased after Paris in his personal vehicle" (Reply at 3) and thereafter, when Paris almost "ran into him on foot," and Hughes detained him. (Petition at 18). Paris does not cite to the record to support that proposition, but he seems likely to be relying on the following trial testimony by Hughes:

Q.    … When you got to the front entrance, what happened?

A.    *I pulled up and was exiting my car and the passenger [from the red Chevrolet] almost ran right into me.*

Q.    *Were you on the phone with 911 at that point?*

A.    *Yes, I was.*

Q.    All right. Did you have your gun drawn?

A.    Yes, I did.

* * *

Q.    All right. What did you do?

A.    I didn't really have to do much of anything. He went right – he saw me when he came up, saw my gun drawn and went straight to the ground.

(Doc. 8-2 at 327) (emphasis added).

22

In isolation, the above testimony is ambiguous as to when Hughes is acknowledging to have called the police. That is, his affirmative response to the question, "Were you on the phone with 911 at that point" could reasonably suggest that Hughes was indicating that he was <u>already</u> on the phone with police when he got out of his car and Paris almost ran into him, <u>before</u> he detained Paris. However, Hughes recounts that (1) his exiting his vehicle, (2) Paris's almost running into him and (3) going "right to the ground," and (4) Hughes's ordering him to stay there all occurred in rapid succession. Thus, Hughes could have perhaps instead understood the question as asking whether, <u>after</u> he had gotten out of his car and Paris had almost run into him and Hughes immediately detained him on the ground at gunpoint, was the <u>next thing</u> Hughes did "at that point" was to get on the phone with the police.

The recording of the 9-1-1 call played for the jury, however, dispels any doubt that the latter interpretation is indeed the correct one. (<u>See</u> Doc. 8-2 at 329-332). The transcript shows that, right after the 9-1-1 operator answered and identified themselves, the first thing Hughes said was: "Yeah, I need a patrol car [at the address of the apartment complex]. <u>I have a suspect on the ground and I am armed.</u>" (Doc. 8-2 at 329 (emphasis added). Thus, the recording, which Hughes authenticated as capturing the entirety of his 9-1-1

23

call, clearly shows that he called police only after he had already detained Paris, meaning police could have had no prior knowledge of anything Hughes was doing.

But even assuming for the sake of argument that Hughes had called 9-1-1 while he was still in pursuit of the red car and its occupants, there is no claim or evidence that the operator or anyone else in law enforcement had instructed, encouraged, or authorized Hughes to detain Paris before Hughes had, in fact, already done so. "[D]e minimis or incidental contacts between the citizen and law enforcement agents prior to or during the course of a search or seizure will not subject the search to fourth amendment scrutiny." United States v. Allen, No. 8:18-CR-526-T-33TGW, 2019 WL 5842684, at *9 (M.D. Fla. Oct. 7, 2019) (quoting United States v. Miller, 688 F.2d 652, 657 (9th Cir. 1982)), report and recommendation adopted, 2019 WL 5802657 (M.D. Fla. Nov. 7, 2019), aff'd, 854 F. App'x 329 (11th Cir. 2021); accord State v. C.D.M., 50 So. 3d 659, 661 (Fla. 2nd DCA 2010); see also United States v. Ford, 765 F.2d 1088, 1089-90 (11th Cir. 1985) (defendant's brother was not acting as an agent of the government when he searched defendant's locked bedroom even though search was two days after DEA agents had come to the brother's house and had asked him for consent to search the house on suspicion that the defendant was in

24

possession of cocaine). Accordingly, it could not have been shown that Hughes was acting as an agent or instrumentality of the police. See Bomengo, 580 F.2d at 175; Francoeur, 547 F.2d 894-95; Propst, 369 F. App'x at 45; see also United States v. Simpson, 904 F.2d 607, 609-10 (11th Cir. 1990) (search of package by Federal Express employee was not subject to Fourth Amendment where "[n]o Government agent instructed the Federal Express employees to open and inspect the box in this case, and no Government agent knew of its existence until after the searches by various Federal Express employees had occurred."); Ford, 765 F.2d at 1090 ("There is no evidence that the Government had any pre-knowledge of the search nor that the agents openly encouraged or cooperated in the search.").

Because a motion to dismiss would have been meritless, the state court could have reasonably concluded that Paris failed to show either deficient performance or prejudice under Strickland. See Premo v. Moore, 562 U.S. 115, 124 (2011) (recognizing that the "relevant question under Strickland" is whether "no competent attorney would think a motion to suppress would have failed"); Freeman v. Attorney Gen., 536 F.3d 1225, 1233 (11th Cir. 2008) ("A lawyer cannot be deficient for failing to raise a meritless claim...."); United

25

States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) ("[A] lawyer's failure to preserve a meritless issue plainly cannot prejudice a client.").

The cases cited by Paris, State v. Sobrino, 587 So. 2d 1347 (Fla. 3rd DCA 19991), and State v. Furr, 723 So. 2d 842 (Fla. 1st DCA 1998) (Petition at 21), are not to the contrary. Neither involves the issue in Paris's case: whether a private citizen was acting at the behest of police or otherwise as an agent of the government as to trigger the protections of the Fourth Amendment. Rather, Sobrino and Furr concerned whether evidence was due to be suppressed because it was obtained in violation of the Fourth Amendment by a duly appointed law enforcement officer who, while on duty, had made a traffic stop and arrest outside their geographic jurisdiction. See Sobrino, 587 So. 2d at 1347-49; Furr, 723 So. 2d at 843-45. Those decisions are inapposite because the officers there were undisputedly acting in their official capacity as government agents, even if they were operating outside of their jurisdiction, so the Fourth Amendment applied. See Ball v. City of Coral Gables, No. 07-20949-CIV, 2007 WL 9706910, at *4 (S.D. Fla. Dec. 19, 2007); see also United States v. Rodger, 521 F. App'x 824, 830 n.3 (11th Cir. 2013) (whether deputy violated Geogia law by making an arrest outside of her jurisdiction was "irrelevant for purposes of the Fourth Amendment as long as the arrest was supported by

26

probable cause," citing <u>Virginia v. Moore</u>, 553 U.S. 164 (2008)) (emphasis added)). Accordingly, <u>Sobrino</u> and <u>Furr</u> would not have signaled to a reasonable defense attorney that evidence in Paris's case was subject to suppression.

The state trial court's rejection of this claim is not contrary to or an unreasonable application of Supreme Court precedent. Nor is it founded on an unreasonable finding of fact. Habeas relief is denied. 28 U.S.C. § 2254(d).

## B. Ground Two

Paris next claims that his counsel was ineffective for failing to properly advise him regarding the applicability of the PRR statue and its effect on his potential sentence, causing him to reject a plea deal that would have resulted in a lesser sentence.  (Petition at 21-23). Paris alleges that, in an effort to convince him to testify against his co-defendant, Jackson, the State made a pretrial plea offer of twenty years imprisonment "as part of a series of a series of debriefings or meetings between Paris, defense counsel Janet Lynn Abel and Assistant State Attorney Janine Marie Mira in the year between Abel's assignment to [Paris's] case and the State's ... filing of the PRR notice." (<u>Id.</u> at 22). Paris claims he rejected that offer but that he did so without understanding the potential application of the PRR statute. (<u>Id.</u>) He claims that counsel was ineffective because she failed to tell him before he rejected

27

the offer "that it was likely that the State would file a [PRR] notice" and that such would mean that, if he were convicted at trial on Count 1, charging armed burglary with an assault or battery, he would receive a mandatory sentence of life without the possibility of parole. (Id.) Paris insists that, had counsel properly advised him, he would have accepted the offer, the State would not have withdrawn it, and the trial court would have accepted it, resulting in a lesser sentence. (Id.) Paris further states that he "is prepared to accept the State's 20 year offer if the Court will order it reinstated if relief is not granted for a new trial under the other grounds raised in [his habeas Petition]." (Id. at 22-23).

The right to effective assistance of counsel "extends to the plea-bargaining process." Lafler v. Cooper, 566 U.S. 156, 162 (2012). "If a plea bargain has been offered, a defendant has the right to effective assistance of counsel in considering whether to accept it." Id. at 168. Where a habeas petitioner claims that counsel's ineffectiveness caused him to reject a plea offer, the petitioner must show both deficient performance and prejudice within the meaning of Strickland. Id. at 162-63. On the former element, he must establish that "counsel's representation fell below an objective standard of reasonableness." Id. (quoting Hill v. Lockhart, 474 U.S. 52, 58 (1985), quoting

28

Strickland, 466 U.S. at 688) (internal quotation marks omitted). Prejudice requires showing a reasonable probability that, but for counsel's ineffectiveness: (1) the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it); (2) the court would have accepted its terms; and (3) the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that were imposed. Id. at 164.

Paris raised this claim in his Rule 3.850 motion, and the state trial court summarily rejected it. (Doc. 1-3 at 2). That court stated simply that Paris's claim that "counsel was ineffective for failing to advise him as to the consequences of a [PRR] sentence" and that, "had counsel properly advised him, … he would have accepted a plea of twenty years … is refuted by the record." (Id.) For that proposition, the trial court cited the portion of the pretrial hearing transcript addressing Paris's PRR status and whether the parties had talked about a plea. (Id., citing Doc. 8-1 at 336-39).

Again, the State filed its PRR notice on the date of, and prior to, that pretrial hearing. (Doc. 8-1 at 41). Paris's counsel highlighted at the hearing that she had advised Paris "couple of weeks" prior that the State would "likely"

29

file a PRR notice and that, if that occurred and he were convicted on the armed burglary count, he would receive a mandatory sentence of life imprisonment without parole. (Id. at 337). Paris acknowledged the trial court he understood that. (Id. at 337-38). The trial court then concluded the hearing by asking the attorneys whether there had been "any negotiations" regarding a plea. (Id. at 338). Paris's counsel responded, "Yes and no," whereupon the prosecutor stated, "There have been no formal offers made by either side." (Id.) Defense counsel confirmed, stating, "No, there's been no formal offer." (Doc. 8-1 at 338).

Paris argues that the hearing transcript does not "conclusively refute" his claim and that, as a result, he is entitled to an evidentiary hearing. (Reply at 5). He asserts "the transcript says nothing of whether the State had or had not offered to let Paris plead to 20 years if he agreed to cooperate" by testifying against Jackson. (Id.) Paris adds, "Alcorn v. State, 121 So. 3d 419 (Fla. 2013) and its progeny have no requirement that a State's offer be referred to as 'formal' or be reduced to writing, or whatever the Assistant State Attorney and defense attorney were referring to." (Id.) Finally, he highlights that the "existence of plea negotiations was even alluded to by Paris' counsel when she responded to the judge's inquiry if plea negotiations had taken place by saying 'yes and no.'" (Id.)

30

The Supreme Court recognized in Lafler that "defendants 'have no right to be offered a plea ....,'" and that "[i]f no plea offer is made," the issue of whether the defendant might have received a more favorable sentence under a plea bargain "simply does not arise." 566 U.S. at 168 (quoting Missouri v. Frye, 566 U.S. 134, 148 (2012)); see also Zamora v. Dugger, 834 F.2d 956, 960 (11th Cir. 1987) (rejecting claim that defense counsel was ineffective because he "failed to plea bargain," recognizing that "the state did not offer ... a plea bargain, and counsel cannot force the state to plea bargain"); Davis v. United States, No. 20-11149, 2022 WL 402915, at *2 (11th Cir. Feb. 10, 2022) (defendant failed to plead facts supporting prejudice on ineffective assistance claim under Lafler where he failed to allege "that the government even offered a plea deal"), cert. den., 598 U.S. ___, 143 S. Ct. 647 (2023); Bilus v. United States, No. 20-11585, 2021 WL 3523922, at *5 & n.10 (11th Cir. Aug. 11, 2021) (where district court permissibly found that "the government made no plea offer," the defendant's "contention that his counsel could have negotiated, or that he otherwise would have entered, a conditional guilty plea is purely speculative.").

The Court agrees with Paris that, while vague, the exchange between the court and both counsel at the hearing in response to the trial court's

31

question about "negotiations" does show there had been some kind of discussion between the parties about a plea. But just because there was some talk of a possible plea is a far cry from the government actually extending a bona fide offer to allow Paris to plead guilty on definite terms. See Carmichael v. United States, 966 F.3d 1250, 1260 (11th Cir. 2020) (claim of prejudice was undermined by "the informality of the discussion between [the prosecutor and defense counsel]," which "left it unclear exactly what the terms of the 'offer' were, much less whether Carmichael was willing and able to satisfy those terms"). Paris alleges that, sometime prior to its filing of the PRR notice, the State made a 20-year offer under which he would have had to testify against Jackson, a deal that Paris says he "rejected." However, this Court must defer to the state court's reasonable finding from the attorneys' statements at the hearing that, whatever conversations were had about a possible plea, they did not yield a "formal offer" that Paris could have, in fact, either "rejected" or "accepted." See 28 U.S.C. §§ 2254(d)(2), (e)(1); Turbi v. Secretary, Dep't of Corr., 800 F. App'x 773, 776 (11th Cir. 2020) ("[T]he state court's finding that the state contemplated, but did not actually extend, a plea offer to Turbi was reasonable in light of the facts before it."); Price v. Dixon, No. 3:22-CV-5379-MCR-MJF, 2023 WL 3688458, at *10 (N.D. Fla. Mar. 10, 2023) (concluding

32

deference was required to state court's reasonable finding that the State had not "made a formal plea offer for 7 years" but had "merely tested the water" to gauge the defendant's potential interest), report and recommendation adopted, 2023 WL 3687984 (N.D. Fla. May 26, 2023). Having found that no actual offer was ever made, the state court could have reasonably determined that Paris failed to show a reasonable probability that he would have been allowed to plead guilty rather than go to trial, as required to show prejudice under Lafler.

Paris's argument that state court's decision is inconsistent with Alcorn or other Florida state appellate cases, on the ground that they do not recognize a "formality" qualifier to plea offers in this context, is a non-starter. State court decisions cannot delineate "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)(1). See Allen v. Secretary, Fla. Dep't of Corr., 611 F.3d 740, 764 n.14 (11th Cir. 2010). Indeed, neither can decisions of the lower federal courts, including the Eleventh Circuit. See Lopez v. Smith, 574 U.S. 1, 2 (2014). Rather, only holdings of then-existing opinions of the Supreme Court of the United States can do so. Williams v. Taylor, 529 U.S. 362, 412 (2000). Therefore, even assuming that the state court's decision here was "contrary to" or represented an "unreasonable application of" Alcorn or other Florida state court decisions, that would not authorize habeas relief under § 2254(d)(1).

33

Paris does not cite any decision of the Supreme Court of the United States purporting to clearly establish what level of definiteness or formality might suffice for an overture by the government regarding a potential plea to qualify as an "offer" in this context. Nor does the undersigned's own research reveal such a precedent. <u>Lafler</u> is the seminal authority, but there was no dispute there either that the government had, in fact, extended several specific plea offers or that the defendant had, in fact, rejected them. <u>See</u> 566 U.S. at 161, 166. <u>Frye</u>, issued the same day as <u>Lafler</u>, involved a claim that counsel's ineffective assistance prevented the defendant from accepting an offer to plead guilty by failing to communicate the offer. <u>See</u> <u>Frye</u>, 566 U.S. at 145; <u>Lafler</u>, 566 U.S. at 160. <u>Frye</u> held that, "as a general rule, defense counsel has the duty to communicate <u>formal offers</u> from the prosecution to accept a plea on terms and conditions that may be favorable to the accused." <u>Frye</u>, 566 U.S. at 145 (emphasis added). The Court declined, however, to explore exceptions to that rule, recognizing that the offer in the case "was a formal one," <u>id.</u>, with the prosecutor having sent defense counsel a letter offering a choice of two specific offers. <u>See</u> <u>id.</u> at 138-39. Paris's case involves an alleged rejection of a plea deal and is thus like <u>Lafler</u>, not <u>Frye</u>. But insofar <u>Frye</u> only went so far as to

34

recognize a duty of counsel to communicate "formal offers," the case does not assist Paris even tangentially.

The only other Supreme Court decision arising out of a defendant's rejection of a plea offer and that addresses Lafler is Burt v. Titlow, 571 U.S. 12 (2013). The Court there held that a state court's determination that counsel's performance in advising the defendant to repudiate a plea agreement was not deficient was not unreasonable under § 2254(d), rejecting the Sixth Circuit's conclusion to the contrary. Id. at 21-24. But Titlow also does not help Paris because the plea agreement that the defendant initially accepted and later repudiated was again unquestionably a formal one. See id. at 15-16. Paris fails to show that the state court's decision in his case is contrary to, or amounts to an unreasonable application of, Supreme Court precedent.

The lack of clearly established Supreme Court pronouncements this area is further highlighted by Justice Jackson's opinion, joined by Justice Sotomayor, dissenting from the denial of certiorari in Davis, supra, 143 S. Ct. at 647-48 (Jackson, J., dissenting from the denial of certiorari). She there argued in February 2023, after Paris's last state appeal had become final, that the Supreme Court should have reviewed the Eleventh Circuit's decision Davis because she believed it necessary to clarify what she viewed as an unsettled

35

question of law regarding just what must be shown in terms of the government's extension of a plea offer to establish prejudice under <u>Lafler</u> and <u>Frye</u>. In particular, Justice Jackson recognized that, under those cases, "the defendant must show there was a 'reasonable probability' that the relevant parties—the prosecution, defendant, and the court—would have accepted the plea." 143 S. Ct. at 647 (quoting <u>Frye</u>, 566 U.S. at 147). She emphasized, however, that

> some Circuits have held that this showing can be made without proof that the Government had put a plea offer on the table, <u>see</u> <u>Byrd v. Skipper</u>, 940 F.3d 248, 252, 255–256 (C.A.6 2019); <u>United States v. Pender</u>, 514 Fed. Appx. 359, 360–361 (C.A.4 2013) (per curiam), while others seem to impose a threshold requirement that a defendant cannot show prejudice if "the government never extended ... a formal plea offer" to the defendant, <u>Ramirez v. United States</u>, 751 F.3d 604, 608 (C.A.8 2014); <u>see also Byrd</u>, 940 F.3d at 264 (Griffin, J., dissenting) (collecting cases to support the proposition that ineffective assistance of counsel in this context "require[s] proof of a plea offer").

Id. She concluded that <u>Davis</u> would present "the Court with a clear opportunity to resolve a Circuit split regarding whether having an actual plea offer is an indispensable prerequisite to making the necessary showing of prejudice." <u>Id.</u> at 648. That the lower federal courts were split on such matters suggests a lack of "clearly established Federal law, as determined by the

36

Supreme Court of the United States." See Kane v. Garcia Espitia, 546 U.S. 9, 10 (2005).

But even assuming for the sake of argument that the State did extend a genuine 20-year plea offer, the state court's determination that Paris's counsel was not ineffective is not unreasonable for the additional reason that the record belies that there is a reasonable probability that Paris would have accepted the offer. Paris's pleading on the point is inconsistent, shall we say. He does allege, "Had counsel advised Paris correctly that it was likely the State would file a [PRR] notice and if the State did so he faced not simply life as a possible sentence, but life as a mandatory sentence, he would have accepted the state's offer." (Petition at 22). He also made that allegation in his Rule 3.850 motion. (Doc. 8-13 at 15). However, a defendant's "own conclusory after-the-fact assertion that he would have accepted a guilty plea, without more, is insufficient to satisfy the first prong of the prejudice test." United States v. Smith, 983 F.3d 1213, 1222 (11th Cir. 2020) (internal quotation marks and citation omitted). And significantly, Paris also pleads that he "is prepared to accept the State's 20 year offer if the Court will order it reinstated if relief is not granted for a new trial under the other grounds raised" in his Petition. (Id. at 22-23 (emphasis added)). He pled that in his Rule 3.850 motion as well. (Doc.

37

8-13 at 16). In other words, Paris has told both the state court and this one that what he really wants is a new trial but that, if he can't have one, he'll take the 20-year plea offer.

But that is effectively the choice Paris would have faced had counsel advised him as he says she should have when the State allegedly extended him the offer. Paris contends that he rejected that offer because he did not understand the applicability of the PRR statute and how it increased his potential sentencing exposure. However, all that counsel could have then told Paris at that time was that the State might at sometime in the future file a PRR notice and that would mean, if he were convicted, he would receive a mandatory sentence of life without parole. But even irrespective of a PRR notice, Paris was already facing a potential sentence of life (albeit with possible parole) on that charge, see Fla. Stat. §§ 810.02(2), with separate mandatory ten-year and twenty-year enhancements for possessing and discharging a firearm in the commission of the offense, id., § 775.087(2)(a). Paris does not claim that he did not understand any of that.

Further, Paris now has full knowledge that the State did, in fact, file the PRR notice, that he was convicted, and that, as a result, he received a mandatory sentence of life without parole. Paris also acknowledges that the

38

State's alleged offer would have required him to testify against Jackson. But Paris's acceptance of a reinstated plea offer at this point would not require him to do so, as Jackson has also already been convicted and sentenced, with his appeals exhausted.[5] Despite all that, Paris still told the state court and this Court that he would opt to take his chances at a new trial over a reinstated plea offer. He also continued to assert his innocence at sentencing. (Doc. 8-1 at 357). All this shows that Paris would have also gone to trial rather than take the State's alleged offer when made. See Le v. United States, 204 F. App'x 812, 819 n.6 (11th Cir. 2006) (defendant failed to show a reasonable probability that he would have pled guilty prior to trial where, "even as of oral argument in this appeal, Le is requesting a new trial, and there is no proffer ... that he wants to plead guilty now"); Osley v. United States, 751 F.3d 1214, 1224-25 (11th Cir. 2014) ("Osley's insistence on his innocence, both before and after trial, makes it more difficult to accept his claim that he would have taken a fifteen-year plea deal."); Carmichael, 966 F.3d at 1261 ("[B]ecause Carmichael was unwilling to accept a plea deal after he was convicted, incarcerated, and

---

[5] See Jackson v. State, 147 So. 3d 984 (table) (Fla. 1st DCA 2014); Jackson v. State, 158 So. 3d 698 (table) (Fla. 1st DCA 2015); Jackson v. State, 273 So. 3d 955 (table) (Fla. 1st DCA 2019); Jackson v. Secretary, Fla. Dep't of Corr., No. 4:19CV368-WS-HTC, 2022 WL 676086, at *1 (N.D. Fla. Jan. 20, 2022), report and recommendation adopted, 2022 WL 671770 (N.D. Fla. Mar. 7, 2022), certificate of appealability denied, No. 22-11102-J, 2023 WL 2812183 (11th Cir. Mar. 1, 2023).

awaiting his sentencing, he cannot show that he would have accepted essentially the same deal prior to his conviction." (emphasis original)).

The state court's rejection of this claim is not contrary to, or an unreasonable application of, Supreme Court precedent. Nor is the adjudication founded on an unreasonable finding of fact. Habeas relief is denied. 28 U.S.C. § 2254(d).

### C. Ground Three

In his third claim of ineffective assistance, Paris complains that his counsel failed to object to the use of the conjunction "and/or" between his name and Jackson's in portions of the jury instructions. (Petition at 23-24; see also Doc. 8-2 at 966-969). Citing Garzon v. State, 908 So. 3d 1038 (Fla. 2008), Paris argues that a competent attorney would have objected to the use of the phrase "and/or" as erroneous and violative of due process. (Petition at 24). In this setting, prejudice requires showing a reasonable probability both: (1) that the omitted objection would have prevailed and, if so, (2) that, with a correction of the offending jury instruction, there would have been a different outcome at trial. See Brewster v. Hetzel, 913 F.3d 1042, 1052 (11th Cir. 2019); LeCroy v. United States, 739 F.3d 1297, 1323 (11th Cir. 2014).

40

The Florida Supreme Court recognized in <u>Garzon</u> and other cases that the use of the conjunction "and/or" when referring to multiple defendants in setting out the elements of offenses in jury instructions is error, because it is confusing and may improperly suggest to the jury that it may or must find one defendant guilty based solely on the acts of another.  <u>See</u> 980 So. 2d at 1045; <u>Hunter v. State</u>, 8 So.3d 1052, 1070 (Fla. 2008); <u>Victorino v. State</u>, 23 So. 3d 87, 100 (Fla. 2009); <u>Rimmer v. State</u>, 59 So. 3d 763, 791 (Fla. 2010). However, the Florida Supreme Court has also recognized that such an error may be harmless where there is "no reasonable possibility that the faulty instruction contributed to the verdict." <u>Victorino</u>, 23 So. 3d at 100-01; <u>Hunter</u>, 8 So. 3d at 1071. Indeed, the Court held in <u>Victorino</u> and <u>Hunter</u>, appeals arising from the same trial, that such an error was harmless considering circumstances that included: (1) that the trial court also gave proper instructions that the evidence against each defendant must be considered separately and that the verdict as to one must not affect the verdict against another, (2) the evidence of each defendant's guilt was "overwhelming," (3) that the jury had used "individualized verdict forms" for each defendant, (4) that the jury's verdict itself indicated individualized determinations, convicting some defendants but

not others of certain offenses despite the "and/or" instructions. <u>Victorino</u>, 23 So. 3d at 101; <u>Hunter</u>, 8 So. 3d at 1071.

The Florida Supreme Court also held in <u>Garzon</u> that, where no objection is made to such an "and/or" instruction, the error only requires reversal where it is "fundamental," meaning it "must 'reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'" 980 So. 2d at 1042 (quoting <u>State v. Delva</u>, 575 So. 2d 643, 644-45 (Fla. 1991)). Applying that standard, the Court held in <u>Hunter</u> and <u>Victorino</u> that the same considerations supporting that errors arising from objected-to "and/or" instructions on some offenses were harmless also meant that errors in using "and/or" instructions on other offenses, where no objection was raised, was not fundamental. <u>Hunter</u>, 8 So. 3d at 1070-71; <u>Victorino</u>, 23 So. 3d at 101-02. The Court also held in <u>Garzon</u> and <u>Rimmer</u> that such unpreserved errors were not fundamental in light of like considerations. <u>See Garzon</u>, 980 So. 2d at 1043-45 (error not fundamental where evidence of guilt was strong, court instructed jury on the law of principals and multiple defendants, court used separate verdict forms, and the verdict suggested separate consideration); <u>Rimmer</u>, 59 So. 3d at 791 (same, where evidence of guilt was "strong," the court instructed the jury on principals and multiple

42

defendants, and the court used separate verdict forms). Indeed, the First DCA rejected a claim by Paris himself on direct appeal that the use of the "and/or" conjunction in the jury instructions amounted to "fundamental error." (See Doc. 8-3 at 27-35; Doc. 8-6).

The state trial court rejected Paris's claim regarding counsel's failure to object to the use of the "and/or" conjunction in the jury instructions. (Doc. 1-3 at 2). Its order cited four reasons: (1) that the court had also instructed the jury on the law of principals and multiple defendants; (2) "none of the trial evidence suggested that [Paris and Jackson] did not commit the burglary together," as the "victim testified that he saw two armed men in his apartment, two men fled the scene together, and two men were arrested shortly after the break in" (citing Doc. 8-2 at 332, 361-364); (3) any error in using "and/or" in the instructions was not "fundamental," so a failure to object "cannot be per se ineffectiveness"; and (4) the jury made a special finding that Paris "actually possessed and discharged a firearm during the commission of the burglary." (Doc. 1-3 at 2).

The state court's rejection of this claim was not contrary to, or an unreasonable application of, Strickland, nor was it otherwise unreasonable for purposes of § 2254(d). The trial judge explained to the jury that, because both

43

defendants were charged with the same crime, she had "consolidated" the instructions so that she was "not reading the same things twice." (Doc. 8-2 at 966-67). But as in Garzon, Hunter, Victorino, and Rimmer, the trial court gave instructions on the law of principals and multiple defendants (see id. at 973-74), including by advising the jury (1) that the State must "prove its accusations against each defendant" (id. at 978), (2) that although the defendants were being tried together, the jury had to consider each defendant separately and the evidence applicable to each separately, and (3) that their verdict as to one defendant must not affect their verdict as to the other. (Id. at 985-86). Also as in those Florida Supreme Court cases, the trial court here used special verdict forms for each defendant, upon which the jury found that Paris "was armed or became armed with a firearm during the commission of the [burglary]" and that he "actually possessed and discharged a firearm." (Doc. 8-1 at 271-72). Finally, as recognized by the trial court, the evidence was strong that both defendants committed the crime together.

It is true that the issue here is not strictly whether the use of the "and/or" instructions rose to the level of "fundamental error" under Garzon. The essence of this claim is that defense counsel was ineffective for failing to object to the instruction, so, in assessing potential prejudice, this Court must

44

evaluate the reasonable probability of a different outcome "but for counsel's unprofessional errors," i.e., assuming counsel had timely and otherwise properly objected. See Strickland, 466 U.S. at 694. Nevertheless,

> [a]pplying the Florida Supreme Court's decision[s] in Garzon [and its progeny], the [state trial court] could have determined that [it] here took the same precautions identified in [those] case[s]—instructions on the law of principals and multiple defendants, and individual verdict forms for each defendant—to emphasize that each defendant was to receive individual consideration.

Holley v. Secretary, Fla. Dep't of Corr., 719 F. App'x 962, 968 (11th Cir. 2017). Accordingly, the state trial court could have further reasonably determined that Paris did not suffer prejudice under Strickland. See Myrtil v. Tucker, No. 11-21366-CIV, 2012 WL 1021832, at *5 (S.D. Fla. Jan. 20, 2012), report and recommendation adopted sub nom. Myrtil v. Buss, 2012 WL 1036129 (S.D. Fla. Mar. 27, 2012); Glover v. Secretary, Dep't of Corr., No. 5:07-CV-435, 2010 WL 4646510, at *3 (M.D. Fla. Nov. 9, 2010); cf. Holley, 719 F. App'x at 968 (denying certificate of appealability on claim that appellate counsel was ineffective for failing to raise a Garzon claim of fundamental error; state court could have found that such a claim would have failed on appeal). Habeas relief is denied. 28 U.S.C. § 2254(d).

45

## D. Ground Four

In his final ground, Paris renews the Sixth Amendment claim in his Rule 3.800 motion. That claim relies primarily on Apprendi and Alleyne. In the former, the Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Apprendi, 530 U.S. at 490. The latter extended Apprendi's rule to facts that increase a mandatory minimum sentence. Alleyne, 570 U.S. at 111-13. Paris contends that his right to a jury trial as interpreted in those cases was violated because he received an enhanced, mandatory PRR sentence of life without parole pursuant to a finding by the trial judge, based on a preponderance of the evidence, that he had committed the present burglary within three years of his release from prison on the prior felony burglary conviction.

The state trial court's order denying Paris's Rule 3.800 motion rejected this claim on the merits. (Doc. 8-10 at 22-25). First, the trial court ruled that its finding that Paris committed the present burglary within three years of his release on his prior felony sentence fell within Apprendi's exception allowing a sentencing court to find "the fact of a prior conviction." (Id. at 23-24 (quoting

46

Apprendi, 530 U.S. at 490). The trial court also relied on Harris v. United States, 536 U.S. 545 (2002), which it recognized to hold "that the right to a jury trial does not apply to facts that establish the minimum term of sentence." (Id. at 24). The First DCA affirmed the trial court's order without an opinion. (Doc. 8-11). Accordingly, this Court analyzes the state trial court's order as the last reasoned decision. See Wilson, 584 U.S. at 125.

To start, a word about the state court's citation to Harris. The state court denied this claim in 2018. However, in 2013, the Supreme Court decided Alleyne, which expressly overruled Harris, holding that the rule of Apprendi extends to facts that increase a mandatory minimum sentence. Alleyne, 570 U.S. at 103. As a result, the state court's continued reliance on Harris was unreasonable. Cf. Ferrier v. Fla. Dep't of Corr., No. 4:17CV178/RH/EMT, 2020 WL 6875973, at *17 n.6 (N.D. Fla. Feb. 12, 2020) (state court decision relying on Harris was not contrary to, and did not unreasonably apply, Supreme Court precedent where state court decision pre-dated Alleyne), report and recommendation adopted, 2020 WL 6873481 (N.D. Fla. Nov. 23, 2020).

That is not to say, however, that the state court's decision rejecting the claim was contrary to, or an unreasonable application of, then-existing Supreme Court precedent under § 2254(d)(1). Alleyne made clear that the rule

47

of Apprendi applied to factfinding required to impose a higher mandatory minimum sentence. But as the state court recognized, Apprendi itself contains an exception that allows a trial court at sentencing to make findings as to "the fact of a prior conviction." See Apprendi, 530 U.S. at 490; see also Almendarez-Torres v. United States, 523 U.S. 224, 226-27 (1998). The Supreme Court recognizes that exception to authorize courts themselves to determine what a prior conviction offense was, as well the elements it encompassed under governing law. See Mathis v. United States, 579 U.S. 500, 511-12 (2016); Descamps v. United States, 570 U.S. 254, 269 (2013).

At the time the state courts rejected Paris's instant claim, Florida state appellate courts had uniformly recognized that a trial judge's PRR determination, i.e., that the defendant had committed the subject offense within three years of release from prison on a prior conviction, came within the Apprendi exception for "the fact of a prior conviction." See Tobler v. State, 239 So. 3d 796 (Fla. 5th DCA 2018); Chapa v. State, 159 So.3d 361, 362 (Fla. 4th DCA 2015); Williams v. State, 143 So. 3d 423, 424 (Fla. 1st DCA 2014); Lopez v. State, 135 So. 3d 539, 540 (Fla. 2nd DCA 2014); see also Calloway v. State, 914 So. 2d 12, 14–15 (Fla. 2d DCA 2005) ("While we recognize that the fact of Calloway's date of release from his prior prison sentence is not the same as a

48

bare fact of a prior conviction, we conclude that it is directly derivative of a prior conviction and therefore does not implicate Sixth Amendment protections."). And federal courts on habeas review agreed that such an interpretation was, at a minimum, not contrary to, or an unreasonable application of, Apprendi or its Supreme Court progeny. See, e.g., Chapman v. Sec'y, Fla. Dep't of Corr., No. 21-10137-F, 2022 WL 20303055, at *1 (11th Cir. June 3, 2022); Mendelson v. Fla. Dep't of Corr., No. 19-10130-J, 2019 WL 3206630, at *2 (11th Cir. May 30, 2019); Howard v. Dep't of Corr., No. 8:22-CV-1678-SDM-TGW, 2025 WL 1078918, at *8 (M.D. Fla. Apr. 10, 2025); Cato v. Sec'y, Fla. Dep't of Corr., No. 3:17-CV-20-J-32MCR, 2019 WL 6877172, at *4-5 (M.D. Fla. Dec. 17, 2019); McGriff v. Sec'y, Dep't of Corr., No. 3:15-CV-1281-J-39JBT, 2018 WL 354956, at *6 (M.D. Fla. Jan. 10, 2018).

But there is a further wrinkle. After the parties' briefing here, the Supreme Court handed down Erlinger v. United States, 602 U.S. 821, 834-35 (2024), which held that a defendant was entitled to have a jury resolve whether his three prior felony convictions were "committed on occasions different from one another," as required to trigger an enhanced mandatory minimum sentence under the Armed Career Criminal Act, 18 U.S.C. § 924(e)(1). The Court recognized that, under the Almandarez-Torres exception to Apprendi, a

trial judge might consult certain limited records to ascertain the jurisdiction of a defendant's prior offenses and the dates upon which they occurred, "for the 'limited function' of determining the fact of a prior conviction and then then-existing elements of that offense." Erlinger, 602 U.S. at 839 (quoting Descamps, 570 U.S. at 260). The Supreme Court rejected, however, that a trial judge had authority " 'to go any further,'" including to decide for themselves whether the defendant's "past offenses differed enough in time, location, character, and purpose to have transpired on different occasions." Id. at 840 (quoting Mathis, 579 U.S. at 511).

Erlinger raises a question about the continued viability of Florida decisions upholding the PRR procedure against Sixth Amendment challenge; even through the date that a defendant is released from prison on a prior sentence is related to the "fact of a prior conviction," it is not itself a prior conviction, an offense, an offense element, or even the date that the offense occurred. See Jackson v. State, 410 So. 3d 4, 10-11 (Fla. 4th DCA 2025) (stating that, under Erlinger, "the timing of the offense with respect to past qualifying felonies or the defendant's release from prison or supervision" had to be decided by a jury, but the error was harmless); Flournoy v. State, 415 So. 3d 806, 808 (Fla. 2nd DCA 2025) (in the wake of Erlinger, the State had conceded that

50

"PRR findings must, at a defendant's request, be made by the jury," but the court declined the decide whether that was, in fact, so because any error was harmless); Hill v. State, 403 So. 3d 505, 508 n.* (Fla. 1st DCA 2025) (Tanenbaum, J., concurring) ("[I]mposition of a PRR sentence ... might also now be constitutionally dubious," citing Erlinger); Denson v. State, 401 So. 3d 633, 635-38 (Fla. 5th DCA 2025) (Eisnaugle, J., concurring specially) (arguing that PRR findings have to be made by a jury under Erlinger); but see Hicks v. State, 422 So. 3d 607, 610-11 (Fla. 1st DCA 2025) (Winokur, J. concurring) (agreeing that any alleged Alleyne error in the case was harmless but arguing that Erlinger does not undercut Florida caselaw allowing trial courts to make PRR determinations).

Nevertheless, Erlinger cannot salvage Paris's claim. Even to the extent Erlinger could suggest that PRR findings must be made by a jury under Apprendi, the Supreme Court did not decide Erlinger until years after the Florida courts' rejection of Paris's claim became final. Therefore, Erlinger cannot be considered in determining the state of "clearly established Federal law" at the time the state courts rejected the claim. See Williams, 529 U.S. at 412; Greene v. Fisher, 565 U.S. 34, 38 (2011). That the caselaw prior to Erlinger uniformly rejected that PRR findings had to be made by a jury is

51

enough to show that the Florida courts' decision denying the claim was not contrary to, or an unreasonable application of, clearly established, then-existing Supreme Court precedent. Cf. Best v. Sec'y, Dep't of Corr., No. 8:25-CV-1223-WFJ-CPT, 2026 WL 81770, at *9 n.7 (M.D. Fla. Jan. 12, 2026) ("Erlinger was decided well after Mr. Best's sentencing, and counsel cannot be deficient for failing to predict what was not yet a certain holding." (internal quotation marks and citation omitted)).

On top of that, relief is properly denied on a claim under Apprendi or Alleyne where any error is harmless. See Washington v. Recuenco, 548 U.S. 212, 218-22 (2006); United States v. King, 751 F.3d 1268, 1279 (11th Cir. 2014). The state courts made no such determination as to this claim. Nevertheless, even assuming that the trial court's finding that Paris was a PRR was error under Alleyne, it is considered harmless on federal habeas review unless it "had substantial and injurious effect or influence" in determining the outcome at trial. Fry v. Pliler, 551 U.S. 112, 116 (2007) (quoting Brecht v. Abrahamson, 507 U.S. 619, 631 (1993)); see also Ferrier, 2020 WL 6873481, at *5; Thompson v. Sec'y, Dep't of Corr., No. 4:15-CV-254-MW-GRJ, 2017 WL 7053984, at *6 (N.D. Fla. Nov. 7, 2017), report and recommendation adopted sub nom. Thompson v. Jones, 2018 WL 577985 (N.D. Fla. Jan. 26, 2018).

52

Paris plainly cannot meet that standard. The record establishes without dispute that Paris committed present burglary on May 25, 2012. Likewise, the Department of Corrections' log admitted at the sentencing hearing establishes without dispute that Paris was released from custody on his prior burglary conviction on October 20, 2010. Whether tried to a judge or jury, and whether on a preponderance or a reasonable-doubt standard, the result would be the same. Thus, it is clear beyond doubt that any Apprendi error made no difference. See Williams v. Inch, No. 3:18CV638-LC-MJF, 2020 WL 6121486, at *11 (N.D. Fla. Sept. 10, 2020), report and recommendation adopted, 2020 WL 6120460 (N.D. Fla. Oct. 16, 2020). Habeas relief on this claim is denied.

## VI. Certificate of Appealability
## Pursuant to 28 U.S.C. § 2253(c)(1)

If Paris seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Paris "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were

'adequate to deserve encouragement to proceed further,'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. <u>See</u> <u>Slack</u>, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." <u>Id.</u> Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.     The amended Petition (Doc. 3) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.     The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. If Paris appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

4. The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this _/7_ day of _February_, 2026.

HARVEY E. SCHLESINGER
United States District Judge